UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA PRESTON,<br><br>                                          Plaintiff,<br><br>          - against -<br><br>THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER MITCHELL LEACH,<br><br>                                          Defendants. | Case No.: 22-cv-6525 (CDH) |

### DECLARATION OF VICTORIA PRESTON IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1)

I, Victoria Preston, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

**Background and Relationship with Zyria**

1. I am the Plaintiff in the above-captioned action. I make this declaration based on my personal knowledge in opposition to Defendants' motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

2. In approximately December 2017, I moved into an apartment at 1100 Norton Street, Rochester, New York, with Michael Hurt. I initially moved in with my seven-year-old daughter. We initially lived in the upstairs apartment for approximately four months before moving to the downstairs rear apartment. In 2018 I became pregnant with Mr. Hurt's child, and early 2019 I gave birth to our daughter. I lived at that address with Mr. Hurt and my two daughters from approximately December 2017 to approximately late January 2020.

1

3.   In early 2018, Mr. Hurt brought home a Pitbull mix puppy. We decided on her name together. He told me he had bought her from somebody. Zyria became our family dog. As Mr. Hurt himself would acknowledge, he brought Zyria home for "the family", that is for me, the kids, and himself. We all took care of her and loved her.

4.   I was the primary caretaker of Zyria. I was the person who mostly fed Zyria. I took Zyria outside, exercised her, and played with her around the house and in the backyard. I trained Zyria to sit, and Zyria would come when called by name. I was the one who primarily looked after Zyria's day-to-day needs.

5.   My oldest daughter, who was nine years old at the time of the February 14, 2020 incident, had a particularly close bond with Zyria. My daughter considered Zyria to be her dog. She played with Zyria regularly and liked to give Zyria water. Zyria was protective of my children.

**Moving Out of 1100 Norton Street**

6.   In late January or early February 2022, approximately two weeks before the incident on February 14, 2022, I ended my relationship with Mr. Hurt and moved out of the apartment at 1100 Norton Street. I went to live with my uncle, Jeff Breedlove, at 485 Avenue D in Rochester, New York. My youngest daughter came with me. My older daughter went to stay with my mother in East Rochester.

7.   When I left 1100 Norton Street, I did not take all of my belongings with me. I had not completely moved out of the apartment. I took only some clothes and basic necessities. The majority of my personal property—including clothes, shoes, toiletries, and my children's belongings—remained at the 1100 Norton Street apartment.

8.    I did not take Zyria with me at the time I left the apartment. Leaving Zyria at that time was not something Mr. Hurt and I discussed. It was not a deliberate decision to relinquish my interest in Zyria or to abandon her. I simply had not yet had the opportunity to retrieve Zyria along with the rest of my belongings.

**I Did Not Abandon Zyria**

9.    I did not abandon Zyria. At no point did I intend to give up my ownership of or interest in Zyria. At no point did I tell Mr. Hurt or anyone else that I no longer wanted Zyria or that I was relinquishing any claim to her.

10.    Between the time I left 1100 Norton Street and February 14, 2022, Mr. Hurt and I had discussed my coming back to retrieve my belongings, but we had not yet set a specific date or time.

11.    The fact that I had not yet retrieved Zyria does not mean I abandoned her. I had not yet retrieved the majority of my personal property from the apartment either. I had recently separated from Mr. Hurt, moved to my uncle's home, and had not yet had the chance to make arrangements to pick up everything I had left behind—including Zyria. Only approximately two weeks had passed.

12.    On February 14, 2022, I was at 1100 Norton Street. I had been discharged from the hospital with my youngest daughter, who I had taken to the hospital the night before for a medical procedure. After my daughter was discharged, I returned to my uncle's house at 485 Avenue D, and found that my uncle had left for work and I was locked out. I called Mr. Hurt and asked if the baby and I could come to 1100 Norton Street for a few hours. He agreed.

13. When I arrived at 1100 Norton Street, Mr. Hurt had one of his friends there along with two women who I did not know, and the apartment was in disarray. I called the Rochester Police Department and asked them to remove these individuals from the apartment. When I called the police, Mr. Hurt left the residence as he did not want to interact with the police; however, his three friends remained. The police responded, came to the apartment, and told the three individuals they had to leave. The police recognized my right to have those people removed from the apartment and acted on my request.

14. After the police removed those individuals, I began cleaning up the apartment and tried to lay my baby down. I was exercising dominion and control over the apartment and the property inside it—including Zyria. When Child Protective Services and Rochester Police later arrived at the apartment that same day, I answered the door. I initially told them they could not come in because of the dog. I then secured Zyria in the bathroom before allowing them to enter. I was the person controlling access to the apartment and making decisions about Zyria's whereabouts within it.

15. If Zyria had not been killed by the police on February 14, 2022, I would have retrieved, or at least attempted to retrieve, Zyria. Zyria would have lived with me and my children. Me and my children, especially my older daughter, had a deep emotional bond with Zyria. I had every intention of having Zyria be part of our household going forward.

**Standing and Injury**

16. Zyria was my family's dog. I was her primary caretaker. I fed her, exercised her, and trained her. My older daughter loved Zyria and considered her to be her own dog.

17. The killing of Zyria caused me significant emotional distress and constituted the destruction of my property. I had a possessory and ownership interest in Zyria at the time

4

she was killed. The fact that Zyria was physically located at 1100 Norton Street on February 14, 2022, does not negate my interest in her, any more than the fact that my clothes, shoes, toiletries, and my children's belongings were physically located there negated my interest in those items.

18. Defendants' characterization of my deposition testimony as evidence of abandonment is inaccurate. I testified at my deposition that I had left the majority of my belongings at the apartment and had not yet had a chance to return to pick them up. That testimony applies equally to Zyria. I never testified that I abandoned Zyria, because I did not abandon her.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _25/02/20_____, 2026.

_Victoria Preston_
Victoria Preston (Feb 25, 2026 13:01:10 EST)
Victoria Preston

5