UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTORIA PRESTON,

                              Plaintiff,

            v.

THE CITY OF ROCHESTER and
MITCHELL LEACH,

                              Defendants

---

**DECISION AND ORDER**

6:22-CV-06525 CDH

## BACKGROUND

On February 14, 2020, defendant Mitchell Leach, an officer of the Rochester Police Department, shot and killed a dog, Zyria, in whom plaintiff Victoria Preston ("Preston") claims to have had an ownership interest. (*See* Dkt. 46 at 1).[1] Preston "contends that Zyria's death was part of 'an epidemic of police killing pet dogs' in the City of Rochester ('City') and has sued Leach and the City (collectively 'Defendants') for unlawful seizure in violation of the Fourth Amendment" pursuant to 42 U.S.C. § 1983. (*Id.*).

On September 23, 2024, Chief United States District Judge Elizabeth A. Wolford, to whom the matter was then assigned, entered a Decision and Order denying a motion for summary judgment filed by Defendants. (*Id.*). In their motion for summary judgment, Defendants had argued (among other things) that Leach was

---

[1]    Defendants have challenged Preston's ownership interest in Zyria. (*See* Dkt. 66). The Court anticipates that this issue will be resolved at the time of trial.

entitled to qualified immunity because Zyria was biting him at the time he discharged his firearm and "clearly established law does not prohibit shooting a dog that is biting an officer." (*Id.* at 16 (internal citation omitted)). Judge Wolford rejected this argument, explaining that there was "a genuine issue of material fact regarding whether Zyria bit Leach, or otherwise could reasonably have been perceived to pose a danger." (*Id.*).

A trial in this matter is scheduled to commence on April 13, 2026. (Dkt. 62). In anticipation thereof, on March 2, 2026, Preston filed a proposed statement of the case in which she stated, in relevant part, that "[a]s Zyria entered the living room, Officer Leach, who was standing within arm's reach of Ms. Preston, kicked Zyria in the mouth, and Zyria bit his ankle area, tearing his pants and causing a small scratch on his ankle." (Dkt. 79-3 at 1).

Defendants have now filed a motion for "[e]ntry of a judgment granting qualified immunity to . . . Leach" on the grounds that Preston "has conceded material facts requiring . . . Leach to be granted qualified immunity." (Dkt. 99 at 1). Preston opposes this motion. (Dkt. 103). Defendants filed a reply on March 24, 2026. (Dkt. 104).

At the pretrial conference held on March 26, 2026, defense counsel confirmed that Defendants are seeking reconsideration of Judge Wolford's denial of the portion of their summary judgment motion seeking qualified immunity for Leach, based on newly available evidence. For the reasons that follow, Defendants' motion is denied. The Court further denies Preston's motion for leave to file a sur-reply. (Dkt. 106).

## DISCUSSION

### I.   Legal Standard for Reconsideration

"The Federal Rules of Civil Procedure do not recognize a motion for 'reconsideration.'" *Neubecker v. N.Y. State*, 387 F. Supp. 3d 302, 303 (W.D.N.Y. 2019). Courts may construe motions for reconsideration "as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)." *Id.* (citation omitted). "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015) (quotation omitted).

### II.   Preston's Statement is a Judicial Admission

As an initial matter, Defendants argue that Preston's acknowledgment in her proposed statement of the case that Zyria bit Leach's ankle area constitutes a judicial

admission.[2] (Dkt. 99-2 at 4-5). Preston contends in opposition that it is not. (Dkt. 103 at 4-5). Preston's arguments in this regard are unpersuasive.

"A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding." *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020). The Second Circuit has identified a number of requirements for a statement to constitute a judicial admission. First, "the statement must be one of fact—a legal conclusion does not suffice." *Id.* Second, the statement "must 'have sufficient formality or conclusiveness to be a judicial admission.'" *Id.* (quoting *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532, 542 (2d Cir. 1965)). Third, the statement must be "intentional, clear, and unambiguous." *Id.* at 361. "A judicial admission may be contained in a statement of undisputed facts, an answer, a bill of particulars or any other pleading, or it may be contained in testimony such as a deposition." *Siam Numhong Prods. Co. v. Eastimpex*, 866 F. Supp. 445, 450 (N.D. Cal. 1994).

Preston's statement meets all the criteria for a judicial admission. It was contained in Preston's proposed statement of the case—in other words, the facts that Preston proposed would be read to the jury as an accurate and undisputed statement of the case. It is a statement of fact and not a legal conclusion. It is clear and unambiguous and there is no indication it was made unintentionally. On the

---

[2]     Defendants also point to a recent memorandum of law filed by Preston, which states that "[Leach] attempted to kick Zyria; when she bit his pant leg, he fired six shots, at least one of which struck and killed Zyria." (Dkt. 69 at 8).

contrary, the parties disagreed about the contents of the statement of the case to be read to the jury, and so each side crafted its own specific proposal. (*Compare* Dkt. 74-6, *with* Dkt. 79-3).

Preston contends that her statement "does not constitute a judicial admission for at least three reasons": (1) it "was made in the context of explaining the sequence of events during the incident and does not carry the weight of a formal, deliberate admission"; (2) "whether Zyria made contact with Leach, and the precise nature, timing, and severity of that contact, are questions of disputed fact that cannot be transformed into judicial admissions simply by extracting language from its context"; and (3) "a dog 'biting' an officer and the causation sequence — i.e., whether the bite caused Leach to fear for his safety, or whether Leach provoked the dog through his own conduct — are quintessentially factual matters requiring evidence at trial." (Dkt. 103 at 5). These arguments are unelaborated upon by Preston and do not bear scrutiny.

As to Preston's first and second arguments, the context in which the statement was made in fact confirms its significance. The document in question was Preston's proposal of facts to be read to the jury as a statement of the case. The Court's Pretrial Order makes clear the purpose of this document. (*See* Dkt. 52 at 3). By proposing that these facts be read to the jury before any proof had been admitted, Preston was necessarily taking the position that they were accurate. And as to Preston's third argument, judicial admissions by definition deal with "factual matters" that would otherwise be required to be proved at trial.

To be clear, the Court does not find that Preston has admitted or conceded that that Leach did not provoke Zyria or that the bite caused him to reasonably fear for his safety. But as to the factual question of whether Zyria bit Leach, Preston has judicially admitted that the answer is yes: Zyria bit Leach in the ankle area, causing a small scratch. Preston is bound by that admission.

## III.    Issues of Fact Preclude Qualified Immunity

Having determined that Preston has made a judicial admission that Zyria bit Leach in the ankle area prior to the shooting, the Court must next determine whether this factual concession entitles to Leach to qualified immunity.

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 607 U.S. ___, ___ S.Ct. ___, 2026 WL 795469, at *2 (Mar. 23, 2026). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quotation omitted). It is not necessary that there be "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Zorn*, 2026 WL 795469, at *2 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

With respect to qualified immunity and the seizure of pet dogs, the Court finds

instructive the Fifth Circuit's decision in *Ramirez v. Killian*, 113 F.4th 415 (2024). In

*Ramirez*, the Fifth Circuit considered whether a police officer was entitled to qualified

immunity for having shot the plaintiffs' pet dogs in June 2016. *Id.* at 419-21. The

court conducted a comprehensive survey of the law of its sister circuits (including the

Second Circuit) and concluded that, as of June 2016, it was clearly established that

"the killing of a pet dog can be a seizure" and that "[s]uch a seizure is reasonable only

if the dog poses an immediate danger and the use of force is unavoidable." *Id.* at 429

(quotations omitted). The court further explained that the "factual context" of the

relevant cases was such that qualified immunity had been denied where the dogs

"were nonaggressive or could have been dealt with through nonlethal means." *Id.* at

428 (quotation omitted).

The *Ramirez* court's analysis of this issue is thorough, persuasive, and

consistent with Second Circuit law. Indeed, one of the cases on which the *Ramirez*

court relied was *Carroll v. County of Monroe*, 712 F.3d 649 (2d Cir. 2013). In *Carroll*,

the Second Circuit held that "the unreasonable killing of a companion animal

constitutes an unconstitutional 'seizure' of personal property under the Fourth

Amendment" and recognized that the failure to use a viable non-lethal method of

control could render the killing of a pet dog unreasonable. *Id.* at 651, 652-53. Courts

in this Circuit have cited *Carroll* as establishing that "[a] readily available, non-lethal

method of stopping [a dog's] advance could render [a police officer's] conduct [in

shooting the dog] unreasonable." *Strong v. Perrone*, No. 17-CV-6183-FPG, 2020 WL

1445877, at *6 (W.D.N.Y. Mar. 25, 2020); *see also Azurdia v. City of New York*, No.

18CV4189ARRPK, 2021 WL 4480655, at *5 (E.D.N.Y. Sept. 30, 2021) (holding that at the time of the plaintiff's dog's death in 2017, *Carroll* "defined with reasonable specificity in the Second Circuit" that "the fatal seizure of a pet by a government employee without justification constitutes a Fourth Amendment violation" and that the appropriate analysis was "the totality of the circumstances analysis as to whether the dog was dangerously aggressive and whether there were viable non-lethal alternatives").

Based on the foregoing, at the time of Zyria's death, it was clearly established that the Fourth Amendment permits the killing of a pet dog only if the pet dog posed an immediate danger and the use of lethal force was unavoidable. As to the latter of these two prongs, the availability of a viable non-lethal method of control may establish that the use of force could have been avoided.

Applying this law to the record in this matter, the Court finds that there are issues of fact that preclude summary judgment in favor of Leach. In particular, Leach—who bears the burden of demonstrating that he is entitled to qualified immunity, *see Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020)—has failed to establish that the use of force was unavoidable. Preston has identified disputed factual issues as to whether Leach could have used non-lethal alternatives, including whether Leach could have used pepper spray or a baton, could have retreated, or could have placed objects between himself and the dog as a barrier. (Dkt. 103 at 8-9).

In addition, Preston has proffered that her expert witness, Dr. James Crosby, will testify "that officers should never kick a dog during an encounter because kicking

will predictably and foreseeably cause the dog to attempt to bite the officer in self-defense." (*Id*. at 9). The Court agrees with Preston that a reasonable jury could conclude that the use of force was avoidable if it was Leach's own conduct, including kicking Zyria, that caused her to bite.

In sum, even accepting that there is no factual dispute as to whether Zyria was acting aggressively and/or presented a danger to Leach at the time she was shot, that does not end the inquiry. To be entitled to summary judgment on the basis of qualified immunity, Leach also must demonstrate that no reasonable jury could conclude that the use of force was avoidable. He has not done so. Accordingly, his motion for reconsideration of Judge Wolford's denial of summary judgment based on qualified immunity is denied.

The Court notes that Preston has filed a motion for leave to file a sur-reply in further opposition to Defendants' motion. (Dkt. 106). Defendants oppose this motion. (Dkt. 107). Whether to permit the filing of a sur-reply rests within the Court's discretion. *See* Loc. R. Civ. P. 7(a)(6). Here, the Court does not require any further briefing in order to resolve Defendants' motion and accordingly denies Preston's request to file a sur-reply.

At trial, the Court will submit to the jury special interrogatories specifically addressed to the question of whether a viable non-lethal method of control was available to Leach at the time he shot Zyria. The Court will discuss the form of these special interrogatories with the parties at the charge conference.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration of Judge Wolford's denial of summary judgment on the basis of qualified immunity (Dkt. 99) is denied. Preston's motion for leave to file a sur-reply (Dkt. 106) is also denied.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:    Rochester, New York
          April 6, 2026