UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTORIA PRESTON,

                    Plaintiff,

            v.

THE CITY OF ROCHESTER and
MITCHELL LEACH,

                    Defendants

**DECISION AND ORDER**

6:22-CV-06525 CDH

---

## BACKGROUND

On February 14, 2020, defendant Mitchell Leach, an officer of the Rochester Police Department ("RPD"), shot and killed a dog, Zyria, in whom plaintiff Victoria Preston ("Preston") claims to have had an ownership interest. (*See* Dkt. 46 at 1).[1] Preston "contends that Zyria's death was part of 'an epidemic of police killing pet dogs' in the City of Rochester ('City') and has sued Leach and the City (collectively 'Defendants') for unlawful seizure in violation of the Fourth Amendment" pursuant to 42 U.S.C. § 1983. (*Id.*).

A trial in this matter is scheduled to commence on April 13, 2026. (Dkt. 62). Preston has filed a motion in limine for "permission to cross-examine Lt. Robert Osipovitch at trial regarding specific instances of conduct probative of untruthfulness pursuant to Federal Rule of Evidence 608(b)[.]" (Dkt. 76 at 1). Specifically, Preston

---

[1]    Defendants have challenged Preston's ownership interest in Zyria. (*See* Dkt. 66). The Court anticipates that this issue will be resolved at the time of trial.

has identified the following incidents as to which she seeks to cross-examine non-party Robert Osipovitch ("Osipovitch"), an RPD lieutenant:

(a) The 201[1] finding by Justice Francis A. Affronti that Lt. Osipovitch tailored his suppression hearing testimony in *People v. Barbosa*;

(b) The 2010 finding by Judge [Ellen M.] Yacknin that "the court has serious doubts as to Officer Osipovitch's credibility" in *People v. Lofton*;

(c) The 2011 dismissal by Justice Daniel Doyle of a criminal indictment in the Barideaux matter after video surveillance evidence contradicted the sworn testimony of Lt. Osipovitch;

(d) The 2021 Giglio disclosure by the Monroe County District Attorney's Office regarding Lt. Osipovitch and the consent to vacate the Edmonds and DeJesus convictions based on undisclosed Brady material; and

(e) The excessive force allegations in *Sterling v. City of Rochester*, to the extent Lt. Osipovitch opens the door through testimony denying prior misconduct or asserting an unblemished record[.]

(*Id.* at 2). Defendants oppose this motion. (Dkt. 90).

At the pretrial conference held on March 26, 2026, the Court denied Preston's motion with respect to the *Barideaux* matter and the 2021 *Giglio* disclosures and associated consents to vacate, for reasons it explained on the record. (*See* Dkt. 108). At that same conference, Preston withdrew her request with respect to *Sterling v. City of Rochester*. The Court reserved decision with respect to the findings in *People v. Barbosa* and *People v. Lofton* and indicated that it would issue a written decision thereon.

For the reasons set forth below, the Court grants Preston's motion to the extent that it will allow limited cross-examination of Osipovitch on the adverse judicial credibility determinations made in *People v. Barbosa* and *People v. Lofton*.

## DISCUSSION

### I.   Legal Standard

Federal Rule of Evidence ("FRE") 608(b) provides:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

Consistent with Rule 608(b), the Second Circuit has "long held that a witness can be cross-examined based on 'prior occasions when his testimony in other cases had been criticized by a court as unworthy of belief.'" *United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012) (alteration omitted and quoting *United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983)); *see also United States v. Fell*, No. 5:01-CR-12-01, 2018 WL 7247414, at *4 (D. Vt. Apr. 4, 2018) (noting that the Second Circuit has "ruled that Rule 608(b) permits a cross-examiner to introduce earlier findings by other judges as evidence of an untruthful character").

In *United States v. Cedeño*, 644 F.3d 79 (2d Cir. 2011), the Second Circuit "articulated a non-exhaustive list of factors that bear on the admissibility of prior credibility findings." *White*, 692 F.3d at 249 (citing *Cedeño*, 644 F.3d at 82-83). Those factors include: whether the prior judicial finding addressed the witness's truthfulness in that specific matter or generally; whether the two sets of testimony

involve similar subject matter; whether the prior untruthfulness was under oath in a judicial proceeding or was made in a less formal context; whether the prior untruthfulness was about a matter that was significant; how much time has elapsed since the prior untruthfulness and whether there have been any intervening credibility determinations regarding the witness; the apparent motive for the untruthfulness and whether a similar motive exists in the current proceeding; and whether the witness has offered an explanation for the prior untruthfulness and, if so, whether the explanation is plausible. *See Cedeño*, 644 F.3d at 82-83.

"In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by [Federal Rules of Evidence] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)." *United States v. Daniels*, 566 F. Supp. 3d 191, 194 (E.D.N.Y. 2021); *see also Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 552 (E.D.N.Y. 2011) ("Evidence admitted under . . . Rule [608(b)] is subject to the probative-prejudice balancing test in Rule 403."). "Rule 403 permits the exclusion of evidence, even if relevant, 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Jean-Laurent*, 840 F. Supp. 2d at 537 (quoting Fed. R. Evid. 403).

## II.     *People v. Barbosa*

On September 19, 2011, New York State Supreme Court Justice Francis A. Affronti issued a Decision and Order suppressing evidence seized by law enforcement

and the defendant's written statement in the matter of *People v. Barbosa*, Ind. 11-0112. (Dkt. 76-4).[2] Justice Affronti's Decision and Order recites testimony that Osipovitch gave at a hearing held in connection with the defendant's motion to suppress. (*Id.* at 2-5). In relevant part, Justice Affronti states that Osipovitch testified that he "cleared" the defendant's basement for officer safety prior to obtaining a search warrant for the premises. (*Id.* at 4). Justice Affronti stated that this testimony was "contrary" to Osipovitch's "Investigative Action Report" which "state[d] he 'searched' the basement." (*Id.*). Justice Affronti concluded that law enforcement actions of "looking into the rafters of the basement" went beyond the bounds of a legitimate protective sweep and that it "appear[ed] that . . . Osipovitch attempted to tailor his testimony so as to nullify constitutional objections to what was not a narrowly circumscribed search." (*Id.* at 10).

Defendants argue as a threshold matter that Justice Affronti "did not make 'a finding'" but merely "mused on the reasons for the perceived discrepancy between the written statement and oral testimony." (Dkt. 90 at 8). The Court disagrees. Read in context, Justice Affronti concluded that law enforcement had conducted a search that went beyond a protective sweep, that this was corroborated by Osipovitch's Investigative Action Report, and that Osipovitch falsely claimed at the hearing that it was a mere sweep and not a search in an effort to avoid suppression. While Justice

---

[2]     The Court may take judicial notice of "documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The Court accordingly takes judicial notice of the fact of the prior judicial decisions at issue here.

Affronti did not specifically use the word "lie," that is not determinative. In *Cedeño*, the state court had "concluded that [the witness] had 'patently tailored' his testimony to avoid suppression of evidence at a traffic stop." 644 F.3d at 81 (quoting *People v. Miret-Gonzalez*, 149 A.D. 2d 647, 649-50 (2d Dep't 1990)). The Second Circuit concluded that this was tantamount to a finding that the witness "had lied." *Id.*; *see also White*, 692 F.3d at 249 (rejecting the argument that a court should distinguish between a finding that a witness lied and a finding that a witness was not credible and explaining that "[a] finding that a witness is not credible is not fundamentally different from a finding that the witness lied. It often just reflects a fact finder's desire to use more gentle language. Nothing, moreover, suggests that *Cedeño* is limited to explicit findings that a witness lied."). Justice Affronti's conclusion that Osipovitch tailored his hearing testimony constitutes an adverse judicial assessment of Osipovitch's credibility.

As to the factors identified by the Second Circuit, on balance, the Court finds that they favor permitting cross-examination on the adverse credibility finding in *People v. Barbosa*. The tailored testimony in that matter occurred under oath in a judicial proceeding and was about a significant matter.[3] *See White*, 692 F.3d at 250

---

[3] Defendants argue that that Osipovitch's false testimony in *People v. Barbosa* "had little significance" because Justice Affronti had "already held the 'protective sweep' as invalid on other grounds" and so the credibility assessment was "unnecessary to the holding." (Dkt. 90 at 8). This argument conflates a matter's significance with whether the matter is dispositive. Osipovitch had no way of knowing at the time of his testimony what legal conclusions Justice Affronti would reach. In the context of a suppression motion, a law enforcement officer's testimony about whether his conduct constituted a search for Fourth Amendment purposes is of the utmost significance, even if it is not ultimately the cornerstone of the court's ruling.

(finding that the witness's testimony in the prior proceeding "plainly involved an important matter: at issue in [the prior proceeding] was whether a firearm and ammunition seized by law enforcement officials should be suppressed"); *Martinez v. City of New York*, No. 16-CV-79 (NRM) (CLP), 2022 WL 20042798, at \*4 (E.D.N.Y. Dec. 4, 2022) (noting that an "adverse credibility determination by a state or federal judge may be particularly probative of a witness's character for truthfulness"). The apparent motive to lie in *People v. Barbosa* was to avoid the consequences of a Fourth Amendment violation and avoid professional disrepute, which is similar to the potential motive that exists in this case. The record before the Court also contains no intervening positive credibility determination.

Certainly, there are also factors that weigh against admissibility. The prior lie occurred in 2011, approximately 15 years ago. Justice Affronti's assessment was with respect to Osipovitch's testimony specifically in the matter at issue and not more generally. While the two sets of testimony both involve an alleged violation of the Fourth Amendment by law enforcement, the specifics of the incidents are quite different. And Osipovitch has not had an opportunity, in this proceeding, to explain the lie and the Court is accordingly unable to make any assessment of the plausibility of such an explanation. *See Prophete v. Acevedo-Smith*, 788 F. Supp. 3d 345, 359 n.9 (E.D.N.Y. 2025) (finding that "[t]he apparent lack of an opportunity for [the witness] to explain the inaccuracies weighs somewhat against permitting cross-examination"). But on the whole, the Court concludes that the adverse credibility determination in *People v. Barbosa* is relevant and probative, and that limited cross-examination

thereon should be permitted. *See White*, 692 F.3d at 251.

The Court further does not find that such cross-examination should be barred under Rule 403. Defendants note that Osipovitch was not an eyewitness to the events in this case and that his role was limited to writing the Incident Report based on information obtained from Leach and a review of the body worn camera footage. (*See* Dkt. 90 at 6-7). Accordingly, Defendants argue, "the jury verdict does not hinge on his . . . testimony." (*Id*. at 7). While it is true that Osipovitch may not be the most important witness at trial, the Court cannot conclude that his credibility is of such little relevance that preclusion is warranted under Rule 403. As Preston points out, Osipovitch's testimony is related to the key issue of whether Leach's shooting of Zyria "was reasonable and consistent with [RPD] policy." (Dkt. 76-1 at 21). And courts have acknowledged that "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004). Defendants' concerns about juror confusion can be addressed by appropriate limitations on the scope of cross-examination, to avoid any potential "trial-within-a-trial," and by limiting instructions, if necessary.

## III.   *People v. Lofton*

On October 12, 2010, Rochester City Court Judge Ellen M. Yacknin conducted a probable cause hearing in the matter of *People v. Lofton*, No. 10-11114. (Dkt. 76-5). At the hearing, Osipovitch testified that he had stopped the defendant after observing that he was operating a bicycle without a bell, a violation of the New York State

Vehicle and Traffic Law. (*Id.* at 8-10). Osipovitch further testified that he had cited the defendant for this violation, and Judge Yacknin noted that there was no record of any such citation in the case file. (*Id.* at 12). In making her findings, Judge Yacknin stated that she found Osipovitch's testimony to be "in some part credible, but some parts not credible." (*Id.* at 31). She went on to explain that "[a]lthough Police Officer Osipovitch testified that he also charged the defendant with riding without a bell on his bike, that charge was never filed with the court" and that she did not believe Osipovitch's testimony "about how this incident came to occur." (*Id.* at 32). Judge Yacknin granted the defendant's motion to suppress based in part on these findings. (*Id.*).

Defendants argue that Preston should not be permitted to cross-examine Osipovitch on the adverse credibility determination in *People v. Lofton* because "Judge Yacknin spoke only to credibility, not truthfulness," and because she "had a mixed assessment." (Dkt. 90 at 9). The Court is not persuaded by these arguments. Judge Yacknin stated that she did not believe Osipovitch's testimony about how the incident in *People v. Lofton* had come to occur. While she did not expressly use the word "lie," as discussed above, that is not determinative. The Second Circuit in *White* rejected this exact argument, holding that "[a] finding that a witness is not credible is not fundamentally different from a finding that the witness lied." *White*, 692 F.3d at 249. Moreover, in *White*, the impeachment evidence consisted of a judicial finding that "<u>certain aspects</u> of [the witness's] testimony were not worthy of belief," which had led the court to "discredit[] <u>some portions</u> of [the witness's] testimony," while also

having "found some of that testimony credible." *Id*. at 241 (emphasis added). The Second Circuit found this mixed assessment of the witness's credibility "relevant and highly probative[.]" *Id*. at 250.

The Court finds that the *Cedeño* factors favor permitting cross-examination on *People v. Lofton*. The testimony giving rise to the adverse credibility determination in that matter was given under oath in a judicial proceeding. It was about suppression and probable cause, matters of significance.[4] Osipovitch's apparent motivation to lie in *People v. Lofton* was to avoid the legal consequences of a Fourth Amendment violation and avoid professional disrepute, which is similar to the potential motive that exists in this case. And as previously noted, there is no indication of an intervening favorable credibility determination or other rehabilitation.

The remoteness of the finding in *People v. Lofton* does weigh against admissibility, as does the dissimilarity of the specific facts of the incidents and the lack of opportunity for an explanation. But these considerations do not overcome the factors that otherwise strongly support the conclusion that this adverse credibility finding is relevant and probative. The Court also does not find that Rule 403 counsels against admission, for the same reasons discussed with respect to *People v. Barbosa*.

For these reasons, the Court will, consistent with FRE 608(b), permit Preston

---

[4]    Defendants argue that "the alleged untruthful nature of Lt. Osipovitch's testimony did not affect the suppression outcome" in *People v. Lofton* because "Judge Yacknin determined that the legal foundations of the search and investigation warranted suppression even if the facts occurred as Lt. Osipovitch described." (Dkt. 90 at 9). Again, that the false testimony was not outcome determinative does not mean that it was not on a matter of significance.

- 10 -

to engage in limited cross-examination of Osipovitch regarding the adverse credibility findings in *People v. Barbosa* and *People v. Lofton*. Specifically, Preston's counsel may ask Osipovitch, during cross-examination, about Justice Affronti and Judge Yacknin's adverse credibility findings. Such cross-examination must be strictly limited to "only those findings . . . that concern [Osipovitch's] character for truthfulness." *Martinez*, 2022 WL 20042798, at *5. For example, Judge Yacknin expressed "serious doubts as to Officer Osipovitch's legal authority to conduct any further investigation once the pat frisk had occurred even assuming that he did have a legitimate basis to pat the defendant for officer safety without any testimony other than we always do it in that area." (Dkt. 76-5 at 32). This is not an assessment of Osipovitch's credibility and it would not be a proper topic for cross-examination. Nor would Justice Affronti's conclusion that "Off. Osipovitch's testimony failed to satisfy the People's formidable burden of establishing the existence of exigent circumstances necessitating a warrantless protective sweep of the Defendant's home." (Dkt. 76-4 at 10).

The Court will also not permit lengthy or unnecessary questioning about the underlying facts of *People v. Barbosa* and *People v. Lofton*. However, Osipovitch will be permitted, either upon questioning by Preston's counsel or while being examined by Defendants' counsel, "to give the jury his own explanation for [the] statements [he made in *People v. Barbosa* and *People v. Lofton*] and his perspective on the findings against him if he chooses to do so." *Martinez*, 2022 WL 20042798, at *5.

**CONCLUSION**

For the foregoing reasons, Preston's motion for permission to cross-examine Osipovitch on the adverse credibility determinations in *People v. Barbosa* and *People v. Lofton* (Dkt. 76) is granted to the extent set forth above.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:  Rochester, New York
        April 9, 2026