UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VICTORIA PRESTON,

Plaintiff,

- against -

THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER MITCHELL LEACH,

Defendants.

**Case No.: 22-cv-6525 (CDH)**

### PLAINTIFF'S MEMORANDUM REGARDING THE ADMISSIBILITY OF BODY WORN CAMERA VIDEOS FROM PRIOR DOG SHOOTING INCIDENTS

#### Preliminary Statement

Plaintiff intends to review the body worn camera (BWC) recordings of prior Rochester Police Department dog shooting incidents—Exhibits 59 through 62—with her police-practices expert, Dr. James W. Crosby, when he takes the stand. The jury cannot fully understand Dr. Crosby's opinions about RPD's canine encounter practices, the City's pattern of dog shootings, and the deficiencies in its training and supervision without seeing the incidents he analyzed. Plaintiff asked defendants to stipulate to the admissibility of Exhibits 59–62 in order to avoid consuming trial time on a dispute that should not exist. Defendants refused. Plaintiff therefore raises the issue now so that the Court can resolve it outside the jury's presence and the parties can proceed efficiently through Dr. Crosby's testimony.

The anticipated authentication objection fails for three independent reasons. First, defendants have waived any authentication objection by failing to identify one in their pretrial submissions, as required by Federal Rule of Civil Procedure 26(a)(3)(B). Second, on the merits, multiple pathways under Federal Rules of Evidence 901 and 902 each independently satisfy the

1

modest authentication threshold. The recordings are the City's own records, produced by the City in discovery and separately in response to Freedom of Information Law requests, identified by the City's own officers in their depositions, matching the City's own incident reports in every particular, and generated by the City's own BWC system that the City itself uses in disciplinary proceedings and criminal prosecutions. Third, the recordings are independently admissible under Federal Rule of Evidence 703 as materials reasonably relied on by Dr. Crosby in forming his opinions, the probative value of which in helping the jury fully understand and evaluate his opinions substantially outweighs any prejudicial effect.

Plaintiff respectfully submits that the authentication objection is waived and, in all events, overruled under the governing authority from this Circuit, including *United States v. Komasa*, 767 F.3d 151 (2d Cir. 2014); *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008); *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Systems, Inc.*, 637 F. App'x 645 (2d Cir. 2016); *Fortune Society v. Sandcastle Towers Housing Development Fund Corp.*, 388 F. Supp. 3d 145 (E.D.N.Y. 2019); and *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017).

## Relevant Background

The BWC recordings at issue are Exhibits 59 through 62 on Plaintiff's Proposed Exhibit List, served March 2, 2026. Each exhibit is a body worn camera recording from a prior RPD dog shooting incident: Exhibit 59 (BWC of Officer Brian Cala from the June 10, 2018 incident at 238 Belknap Street); Exhibit 60 (BWC of Officer Kenneth Pinckney from the August 11, 2019 incident on Cedarwood Terrace); Exhibit 61 (BWC of Officer Whitney Celentano from the February 1, 2020 incident at 17 Webster Crescent); and Exhibit 62 (BWC of Officer Javier Algarin from the October 19, 2018 incident at 53 Kosciusko Street). The City produced each of these recordings in discovery in the related dog shooting case. The City's Rule 26(a) disclosures

2

in this case, served March 23, 2023 specifically identify "Body Worn Camera Video of Dog Shooting Incidents" produced in the related cases of *Dempsey* (19-cv-6780), *Gursslin* (20-cv-6508), *Anniszkiewicz* (20-cv-6629), and *Cox* (22-cv-6207). The City's response to Plaintiff's Request for Production No. 8 confirms production of the *Preston*-incident BWC video on November 18, 2022.

On April 10, 2026, at the final pretrial conference, and again during the first two trial days on April 13 and 14, 2026, defendants signaled that they would object to admission of Exhibits 59–62 through Plaintiff's police-practices expert, Dr. James W. Crosby, on the ground that Dr. Crosby was not present at any of the prior incidents and is not the custodian of the City's BWC records. Defendants did not file any pretrial written objection to the authenticity of the exhibits on Plaintiff's exhibit list. Defendants' only pretrial objection filings were to Plaintiff's deposition designations (ECF 92), Plaintiff's proposed jury instructions (ECF 100), and Plaintiff's proposed voir dire (ECF 101).

The Court's Pretrial Order (ECF 52) required the parties to raise evidentiary issues, including "authentication of tapes and voice identification," pretrial. ECF 52 at 7 (¶ III.G.2). The Order also provides that failure to file timely objections to deposition testimony constitutes a waiver of such objections. Id. at 5 (¶ III.E.2).

### Argument

I. **Defendants Have Waived Any Authentication Objection to Exhibits 59–62 by Failing to Raise It in Their Pretrial Submissions.**

Federal Rule of Civil Procedure 26(a)(3)(B) requires parties to serve objections to the admissibility of exhibits identified in pretrial disclosures within 14 days of service of those

disclosures. The Rule is states: "An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause." Fed. R. Civ. P. 26(a)(3)(B).

The exclusion from the waiver rule is limited to relevance (Rule 402) and unfair prejudice (Rule 403) objections. Authentication objections under Rule 901 are not excepted—they are subject to the full force of the Rule 26(a)(3)(B) waiver. Defendants filed no document identifying specific authentication objections to any exhibit on Plaintiff's exhibit list. Their pretrial objection filings addressed deposition designations, jury instructions, and voir dire only. Any authentication objection is therefore extinguished.

The Court's Pretrial Order reinforces this conclusion. The Order expressly identified "authentication of tapes and voice identification" among the evidentiary issues the parties were required to raise pretrial. ECF 52 at 7 (¶ III.G.2). Defendants had notice that authentication objections had to be preserved before trial. They did not preserve the objection, and the Rule 26(a)(3)(B) waiver applies.

II. **<u>The City's Own Production of the Recordings in Discovery Is Sufficient Authentication Under Rule 901(a).</u>**

The Second Circuit has held that "[t]he bar for authentication is not high." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). "Rule 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Id.* (internal quotation marks omitted).

Production by the party challenging authenticity is itself sufficient evidence of authentication under Rule 901. In *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control*

*Systems, Inc.*, 637 F. App'x 645, 649 n.7 (2d Cir. 2016), the Second Circuit held that a document was properly authenticated where (1) its "substantive detail" regarding the challenging party's business was consistent with what it purported to be (Rule 901(b)(4)), and (2) "it was produced by [the challenging party] itself." The court held that these factors together made it "reasonably likely" that the document was authentic. *Id.*

District courts in this Circuit apply the same rule. In *Fortune Society v. Sandcastle Towers Housing Development Fund Corp.*, 388 F. Supp. 3d 145, 180 n.6 (E.D.N.Y. 2019), the court held: "The bar for authentication is not high and, where as here, the documents are produced by the party challenging authentication, and there is no reason to question the authenticity of the document, the court may consider the document." *Id.* (citing *AT Engine Controls*, 637 F. App'x at 649 n.7, and *Al-Moayad*, 545 F.3d at 172).

That principle is dispositive here. The City of Rochester, through its counsel, produced the BWC recordings at issue in response to discovery demands in this case and in the related *Dempsey, Gursslin, Anniszkiewicz*, and *Cox* cases. The City identified each recording by incident number and officer name in its own Rule 26(a) disclosures. The City has never contested the authenticity of these recordings in any proceeding. Under the governing Second Circuit authority, the City's own production is authentication.

III. **The Recordings Are Self-Authenticating Business Records Under Rule 902(11), Consistent With the Court's Prior Ruling and the Second Circuit's Decision in _Komasa_.**

Rule 902(11) provides that a domestic record of regularly conducted activity meeting the requirements of Rule 803(6)(A)–(C) is self-authenticating upon a certification from the

5

custodian, provided the proponent gives the adverse party "reasonable written notice of the intent to offer the record" before trial. Fed. R. Evid. 902(11).

The Second Circuit has held that the written-notice requirement is excused where the adverse party has actual notice and a fair opportunity to challenge the records. *United States v. Komasa*, 767 F.3d 151, 155–56 (2d Cir. 2014). In *Komasa*, the Second Circuit affirmed admission of loan files as self-authenticating business records under Rule 902(11) even though the government had not provided written notice, because defendants had actual notice of the government's intent to proffer the documents as self-authenticating and had received copies of the records and certifications before trial. *Id.* The Court held: "While not faced with the ideal set of circumstances, we cannot say the district court abused its discretion in admitting the documents as self-authenticating. This is especially the case because here, as defendants candidly admitted at oral argument, they did have a chance to challenge the authenticating certificates." *Id.* at 156.

This is the same authority the Court cited in admitting the *Preston* Investigative Action Report earlier in trial. It applies with equal force to Exhibits 59–62. The BWC recordings qualify as records of regularly conducted activity under Rule 803(6)(A)–(C): (1) made at or near the time of the events they record by officers on duty; (2) kept in the course of the RPD's regularly conducted policing activity; and (3) created pursuant to the RPD's General Orders, which require officers to record certain duties including use of force and firearm discharges. Defendants produced these recordings in November 2022 in response to Plaintiff's *Monell*-related discovery demands in *Dempsey*—more than three years of actual notice—and have had full opportunity to challenge them. Under *Komasa*, Rule 902(11)'s written-notice requirement is satisfied or excused.

6

**IV.** **The Recordings Are Also Self-Authenticating Public Records Under Rules 902(4) and 902(14).**

BWC recordings are records of a public office. They are generated by equipment issued and maintained by the Rochester Police Department, a public agency, during the performance of official police duties, and maintained by the RPD as official records of police activity. They fall within the definition of a "record or statement of a public office" under Federal Rule of Evidence 803(8)(A)(i)—a record that "sets out the office's activities."

Rule 902(4) provides that a copy of an official record is self-authenticating if it is "certified as correct by the custodian or another person authorized to make the certification." Fed. R. Evid. 902(4). Rule 902(14), added in 2017, provides that data copied from an electronic device or file is self-authenticating if a "qualified person" certifies that it is a "true and complete copy." The City's own production of these records in discovery—by certified counsel acting pursuant to Rule 26(g) of the Federal Rules of Civil Procedure—constitutes such certification.

Moreover, each of the BWC recordings comprising Exhibits 59 through 62 was separately produced by the Rochester Police Department in response to New York Freedom of Information Law requests. See N.Y. Pub. Off. Law §§ 84–90. RPD's FOIL productions of these recordings—released by the Department's official FOIL records access officer in response to formal public-records requests and identifying each recording by incident and date—reinforce their status as official records of a public office under Rule 803(8)(A)(i) and as self-authenticating public records under Rule 902(4). Each FOIL production independently satisfies the certification element of Rule 902(4): the recordings were released by the agency's designated records custodian, in the agency's official capacity, as authentic copies of the Department's own BWC files.

### V. Each Recording Is Also Authenticated by Deposition Testimony of the Officers Who Recorded It Under Rule 901(b)(1).

Rule 901(b)(1) permits authentication by "testimony that an item is what it is claimed to be." The officers whose BWC recordings comprise Exhibits 59–62 were each deposed in the related cases, and each officer identified his or her own BWC footage in testimony that the Court has admitted as part of Plaintiff's Monell designations. The deposition testimony of Officer Cala (Ex. 7), Officer Pinckney (Ex. 24), Officer Celentano (Ex. 19), and Officer Algarin (Ex. 2), each identify the officer's own BWC recording. That testimony is itself sufficient authentication under Rule 901(b)(1).

### VI. The Recordings Are Further Authenticated by Their Distinctive Characteristics and Internal Consistency With the City's Own Records Under Rule 901(b)(4).

Rule 901(b)(4) permits authentication through '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.' The Second Circuit has held that a document can be authenticated through its 'distinctive characteristics' — including its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances.' *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990)).

### VII. The Recordings Are Not Hearsay and, Alternatively, Fall Within the Public-Records and Business-Records Exceptions.

Body worn camera recordings are not hearsay. A BWC recording is a mechanical recording of events as they occurred; it is not a "statement" by a "declarant" within the meaning of Federal Rule of Evidence 801(a)–(c). The recording device has no declarant, no assertion, and no testimonial intent. Machine-generated evidence is outside the hearsay rule entirely. *See*

8

*United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109–10 (9th Cir. 2015) (satellite imagery not hearsay because "machines do not make statements"); *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) (video surveillance footage not hearsay).

In any event, the recordings also satisfy two independent hearsay exceptions. Rule 803(8) excepts from the hearsay rule a "record or statement of a public office" that "sets out the office's activities"—which is precisely what BWC recordings do. Rule 803(6) excepts records of a regularly conducted activity made at or near the time by someone with knowledge, kept in the course of a regularly conducted activity, where making the record was a regular practice. BWC recordings are created automatically and contemporaneously during police activity pursuant to RPD policy requiring their use. *See Komasa*, 767 F.3d at 155.

## VIII. The Recordings Are Independently Admissible Under Rule 703 Because the Jury Cannot Fully Understand Dr. Crosby's Opinions Without Seeing the Incidents He Analyzed.

Federal Rule of Evidence 703 provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," and that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Where the underlying facts or data would otherwise be inadmissible, they "may be disclosed to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Id.

Plaintiff's police-practices expert, Dr. James W. Crosby, reviewed each of the BWC recordings designated as Exhibits 59 through 62 in forming his opinions in this case. Dr. Crosby's opinions address, among other things, whether Officer Leach's conduct on February 14,

9

2020 was consistent with generally accepted police canine encounter practices; whether the Rochester Police Department had an identifiable pattern of officers shooting family dogs under similar circumstances; and whether the Department's training, supervision, and post-incident review processes were adequate to address that pattern. Each of those opinions is grounded in a comparative analysis of the *Preston* incident and the prior incidents depicted on Exhibits 59–62. BWC recordings of prior similar incidents are exactly the type of primary-source material on which experts in police practices and canine behavior reasonably rely.

The probative value of disclosing the recordings to the jury substantially outweighs any prejudicial effect. Dr. Crosby's analysis depends on the specific conduct, commands, distances, timing, and behaviors captured on each recording. A verbal description of what occurred in each prior incident cannot substitute for the jury's ability to see and hear the incident itself. Without the recordings, the jury cannot fully understand the factual predicate for Dr. Crosby's opinions, cannot fully evaluate the reasonableness of his methodology, and cannot fully assess his conclusions about pattern, training, and supervision. That evaluative purpose is precisely what Rule 703 contemplates.

The Second Circuit has approved the admission of expert testimony on police practices supported by the expert's review of primary-source materials from prior incidents. *See Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017). Admission of the underlying recordings under Rule 703 is consistent with that practice and with the Court's obligation to provide the jury with the information it needs to evaluate the expert's opinions.

No prejudice cognizable under Rule 403 attaches to admission of Exhibits 59–62. The recordings are the City's own records of its own officers' conduct during on-duty policing

activity. The Court has already ruled that evidence of the City's pattern of dog shootings is admissible on Plaintiff's deliberate-indifference *Monell* theory. Any residual concern can be addressed through tailored limiting or contextual instructions, not through exclusion.

For these reasons, even if the Court were to reject every other basis for admission, Exhibits 59–62 should be disclosed to the jury under Rule 703 as materials reasonably relied on by Dr. Crosby, the probative value of which substantially outweighs any prejudicial effect.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) find that defendants have waived any authentication objection to Exhibits 59–62 under Federal Rule of Civil Procedure 26(a)(3)(B); (2) admit Exhibits 59–62 on the independent and alternative grounds that each recording is authenticated under Federal Rules of Evidence 901(a), 901(b)(1), 901(b)(4), 902(4), 902(11), and 902(14), and is either non-hearsay or admissible under Rules 803(6) and 803(8); and (3) in the further alternative, disclose Exhibits 59–62 to the jury under Federal Rule of Evidence 703 as materials reasonably relied on by Dr. James W. Crosby in forming his opinions, the probative value of which in helping the jury fully understand and evaluate his opinions substantially outweighs any prejudicial effect.

Dated: Rochester, New York
         April 15, 2026

                    Respectfully submitted,

                    By: /s/ Elliot D. Shields
                       Elliot D. Shields, Esq.
                       192 Lexington Avenue, Suite 802
                       New York, New York 10016
                       (212) 425-1020
                       eshields@rothandrothlaw.com
                       *Attorneys for Plaintiff Victoria Preston*

11