UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VICTORIA PRESTON,<br><br>         Plaintiff,<br><br>   - against -<br><br>THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER MITCHELL LEACH,<br><br>         Defendants. | **Case No.: 22-cv-6525 (CDH)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a)**

Elliot Shields
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020

## PRELIMINARY STATEMENT

Plaintiff Victoria Preston respectfully moves this Court pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law on each of the three claims now before the jury: (1) the Fourth Amendment unreasonable-seizure claim under 42 U.S.C. § 1983 against Defendant Mitchell Leach for shooting Zyria; (2) the *Monell* claim against the City of Rochester predicated on an unconstitutional custom, policy, or practice of authorizing RPD officers to use lethal force against dogs without first assessing the actual threat posed; and (3) the *Monell* claim against the City predicated on deliberate indifference through failure to train.

The evidence admitted at trial — including Officer Leach's own repeated concessions under oath, Dr. Crosby's unrebutted expert testimony, the Court's April 1, 2026 order applying offensive collateral estoppel to the custom-policy-practice theory (Dkt. 109), and the admitted Rule 30(b)(6) testimony of RPD Lieutenant Cuilla — compels each of these results under the governing Rule 50(a) standard. The record is not merely sufficient; it is overwhelming and, in critical respects, undisputed.

## LEGAL STANDARD

Under Fed. R. Civ. P. 50(a)(1), judgment as a matter of law is warranted where, after a party has been fully heard on an issue during a jury trial, "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." The Court must review the record "in the light most favorable to the non-movant," but "a mere scintilla of evidence is insufficient to defeat the motion." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007); accord *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (judgment as a matter of law is proper where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise

and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded persons could not arrive at a verdict against it").

"A directed verdict is proper only if 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' " *Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir. 1990) (citations omitted); see also *9B Wright & Miller, Fed. Prac. & Proc.* § 2535 (3d ed.). That demanding standard is satisfied here — principally through the sworn admissions of the defendant officer himself, supplemented by unrebutted expert and Rule 30(b)(6) testimony — for the Fourth Amendment claim and, under the Court's prior collateral-estoppel ruling and the record evidence of causation, for the *Monell* custom-policy-practice claim.

## II.  JUDGMENT AS A MATTER OF LAW SHOULD ISSUE ON THE FOURTH AMENDMENT UNREASONABLE-SEIZURE CLAIM AGAINST OFFICER LEACH

### A.  Governing Standard — *Carroll v. County of Monroe*.

The Second Circuit has squarely held that "the unreasonable killing of a companion animal constitutes an unconstitutional seizure of personal property under the Fourth Amendment." *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (internal quotation omitted). "To determine whether a seizure is unreasonable, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion" and determine whether "the totality of the circumstances justified [the] particular sort of ... seizure." Id. (internal citations omitted). Central to that inquiry is whether the shooting was "unavoidable" under the circumstances — i.e., whether the officer had reasonable, less-intrusive alternatives that he failed to pursue. *Ramirez v. Killian*, 113 F.4th 415, 428 (5th Cir. 2024) ("Where the killing is done by a police

officer while on-duty, the Fourth Amendment analysis centers on whether the pet dog posed an immediate danger and whether killing it was unavoidable.")

*Carroll* and *Ramirez* frame the Fourth Amendment inquiry around the availability and foregone use of less-intrusive alternatives. Officer Leach's own trial testimony admits each factor in Plaintiff's favor.

### B.  Officer Leach's Sworn Admissions Conclusively Establish Unreasonableness.

Officer Leach testified on redirect examination that the shooting of Zyria was "avoidable," and he identified, one by one, the non-lethal alternatives he had on his person and in the apartment that he chose not to use. This is not a case where the record merely permits a finding of unreasonableness; it compels it.

#### 1.  Leach's admission that the shooting was avoidable.

Q  So the shooting was avoidable?
  MS. JONES: Objection. That's a conclusion.
  MAGISTRATE JUDGE HOLLAND: If he's able to answer the
question, if he understands it, he can answer it. The objection is
overruled.
A  Of course the shooting could have been avoidable.

Leach Trial Test. 69:16-21 (Apr. 15, 2026) (Redirect by Shields). Leach repeated this admission, over objection, several pages later:

Q  But just a few minutes ago you said that the shooting was
avoidable, correct?
A  I recall your question was that — could the shooting have been
avoidable? Could have? Yes, it very well could have been
avoidable . . . .

Leach Trial Test. 74:10-16 (Apr. 15, 2026).

#### 2.  Leach's admissions that less-lethal alternatives were available and that he chose not to use them.

Immediately after admitting avoidability, Leach confirmed, in seriatim, that he could have used each of the alternatives he carried and had around him — and that despite the availability and ability to use these less-lethal alternatives, he did not:

> Q  [O]ther reasons it was avoidable is because you could have used your pepper spray, correct?
> A  Yes, could have.
> Q  And another reason it was avoidable is because you could have used your baton?
> A  Yes, I could have.
> Q  And another reason it was avoidable is because you could have placed one of the household items between yourself and the dog?
> A  Yes, I could have.

Leach Trial Test. 74:17-75:1 (Apr. 15, 2026).

Leach earlier confirmed the same point in the affirmative — that he had a "choice" among his firearm, his pepper spray, his baton, and household items like a laundry basket, and that he "chose not to" use any less-lethal option:

> Q  You had a choice whether to reach for your firearm or your pepper spray, right?
> A  Yes.
> Q  You had a choice to reach for your firearm or your baton, correct?
> A  Yes.
> Q  And you had a choice to reach for your firearm or any one of the household items like the laundry basket to place between yourself and the dog, correct?
> A  Yes, sir, that is absolutely correct.
> Q  But you chose not to?
> A  Yes.

Leach Trial Test. 66:12-23 (Apr. 15, 2026).

These admissions are not isolated. The same concessions were drawn on both days of Leach's testimony. *See* Leach Trial Test. 42:10-13 (Apr. 14, 2026) (confirming that at the moment the dog bit his ankle area, "you could have used your pepper spray on the dog" — "I could have, yes"); Leach Trial Test. 29:25-30:7 (Apr. 14, 2026) (confirming he had household

items available as a barrier and "chose not to" use them). At no point did Leach retract any of these admissions on recross by defense counsel.

Under *Carroll* and *Ramirez,* the Fourth Amendment inquiry is whether the officer had reasonable alternatives to shooting and failed to use them. See *Carroll*, 712 F.3d at 651-53. The officer himself — the party bearing the real-world knowledge of his options in the moment — has testified, unequivocally, that he had alternatives, that those alternatives "could have aided [him] in avoiding shooting the dog," and that he chose not to use them. Leach Trial Test. 69:10-15 (Apr. 15, 2026). That is a judicial admission on the dispositive factual question. *See Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that bind [] that party throughout the litigation.").

### 3. Leach's admission that the shooting would have been avoided with different training — evidence that also carries the *Monell* claims (infra).

Q  If you had had different training that involved shoot/don't shoot situations with dogs that trained you to pull out your pepper spray or your baton or use a household item to create a barrier, could that have led to a different outcome here?
  MS. JONES: Objection. Speculation.
  MAGISTRATE JUDGE HOLLAND: Overruled.
A  It could have.

Leach Trial Test. 80:6-13 (Apr. 15, 2026).

Leach further confirmed that he "fell back on [his] training" during the incident and that his training on the relevant subjects — less-lethal alternatives, shoot/don't shoot scenarios involving dogs, and the meaning of "imminent threat" under General Order 340 — was absent or inadequate. Leach Trial Test. 79:13-22 (Apr. 15, 2026) ("when you encounter a situation as a police officer under fast-paced circumstances, you fall back on your training . . . that's what you did on February 14th, 2020"); id. at 58:15-18 ("you never received any training about how to use any less lethal means against a dog that's running at you, correct? — Yes, sir."); id. at 79:7-12

("you never received any training about what the definition of imminent threat means with respect to General Order 340, correct?" — "Yes, I don't recall if it was explained to us verbatim . . .").

These admissions serve a dual purpose. They establish unreasonableness under *Carroll* and *Ramirez* (he had less-lethal options and failed to use them) and they supply the causation element for the *Monell* claims below (his training was the proximate cause of his choice to shoot).

### C.  Dr. Crosby's Unrebutted Expert Opinion Confirms the Result.

Dr. Crosby — whose canine-behavior and police-training opinions were admitted in full — testified that the pre-bite behavior Leach described did not warrant deadly force, that viable non-lethal alternatives existed in the moment (expandable baton, pepper spray, household items as physical barriers), and that shooting six times in a small living room with a mother and her infant daughter feet away was not the response of a reasonable officer. *See* Crosby Trial Test., Apr. 16, 2026. Crosby's testimony was not meaningfully rebutted on cross and defendants offered no competing canine-behavior expert.

The combination of the Defendant Officer's own admissions and a qualified, unrebutted expert on canine behavior and training on police-dog encounters leaves no legally sufficient basis for a jury to find the seizure reasonable. That combination satisfies *Granite Computer Leasing's* "overwhelming" standard. 894 F.2d at 551.

### D.  Relief Requested.

Plaintiff respectfully requests that the Court grant judgment as a matter of law that Officer Leach's shooting of Zyria was an unreasonable seizure in violation of the Fourth Amendment, leaving only the issue of damages for the jury. In the alternative, Plaintiff preserves this motion for renewal under Rule 50(b).

**III. JUDGMENT AS A MATTER OF LAW SHOULD ISSUE ON THE *MONELL* CUSTOM, POLICY, OR PRACTICE CLAIM AGAINST THE CITY**

**A. The Court Has Already Held That the City Is Collaterally Estopped From Denying the Existence of the Unconstitutional Policy.**

By Decision and Order entered April 1, 2026 (Dkt. 109), this Court held — on the basis of the jury verdict in *Dempsey v. City of Rochester*, No. 6:19-cv-06780 (W.D.N.Y. Jan. 30, 2026) — that offensive collateral estoppel applies to the custom-policy-practice theory of *Monell* liability. Specifically, the Court ruled that:

> the City will be collaterally estopped from arguing that it did not
> have a custom, policy, or practice of authorizing its officers to use
> lethal force against dogs encountered during police operations
> without first assessing the actual threat posed by the dog.

Dkt. 109, at 15-17.

Accordingly, the existence of the unconstitutional policy or custom is no longer in issue. The only remaining element for this theory is moving-force causation — whether the policy caused the constitutional violation. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Cash v. County of Erie*, 654 F.3d 324, 333-34 (2d Cir. 2011).

**B. The Record Establishes Moving-Force Causation as a Matter of Law.**

**1. Leach himself tied his conduct to the City's policy and training.**

As detailed in Part II.B.3 supra, Leach testified without equivocation that he "fell back on [his] training" on February 14, 2020 — the very conduct the jury is evaluating. Leach Trial Test. 79:13-22 (Apr. 15, 2026). He further testified that he was never trained that lethal force against a dog is permitted only when "the shooting was unavoidable"; and he was never trained on the use of any less lethal means against a dog that is running at him. Leach Trial Test. 58:15-18. (Apr. 15, 2026). Furthermore, he confirmed that, with different training on less-lethal options in dog encounters, the outcome "could have" been different. Leach Trial Test. 80:6-13 (Apr. 15, 2026).

Evidently, Officer Leach's own testimony ties his choice to shoot Zyria to the City's policy — the very policy the City is now estopped from denying. That is direct — not circumstantial — evidence of moving-force causation.

### 2. The City's policy permits shooting for even a risk of minor injury, and Leach's own injury was minor.

Lieutenant Cuilla, the City's Rule 30(b)(6) designee, testified at his deposition, which was played back for the jury, that RPD policy authorizes officers to shoot a dog when the officer perceives a threat of physical injury, without regard to whether the anticipated injury is serious or merely minor, and without requiring an officer to attempt any less-lethal alternative first.

The evidence shows Leach sustained only a minor injury to his right ankle/pant-leg area — the dog had already bitten him before he fired and he candidly testified that, even at that moment, he "could have" used his pepper spray instead of his firearm. Leach Trial Test. 42:9-14 (Apr. 14, 2026). Under the City's own policy as described by its own Rule 30(b)(6) witness, that risk of minor injury was sufficient to authorize deadly force. A reasonable jury, fully crediting defendants' evidence, cannot find otherwise on causation.

### 3. RPD policy affirmatively conflicts with the DiDomenico "Bite Prevention" instruction the City relies on, leaving officers without clear guidance — as Dr. Crosby explained.

Dr. Crosby testified that Rochester's written policy, New York State's statutory framework, and the DiDomenico "Bite Prevention for Law Enforcement" training materials send conflicting signals to officers on when lethal force is permitted against a dog, and that this confusion leaves officers without usable guidance at the moment of decision. Crosby Trial Test., Apr. 16, 2026. Leach's testimony confirmed the practical effect of that confusion: he could not reconcile the various sources and therefore fell back on what he remembered, which was to shoot. *See* Leach Trial Test. 79:13-22 (Apr. 15, 2026); id. at 40:11-41:1 (Apr. 14, 2026).

**4.  Unlike Buffalo — whose policy prohibits shooting a dog when citizens are in the same room — RPD policy permits the very shooting that occurred here. Lt. Nigrelli's testimony establishes that with the same policy as Buffalo's, this shooting would not have happened.**

Lieutenant Peter Nigrelli, Commander of the SWAT team of the Buffalo Police Department, testified that the Buffalo Police Department's policy prohibits officers from discharging a firearm at a dog where citizens are in the same room or direct line of fire, and that under Buffalo's policy the shooting of Zyria — with Ms. Preston holding her one year old child right next to him— would not have been permissible. Nigrelli Trial Test., Apr. 17, 2026.

The contrast between the City of Buffalo's policy and the City of Rochester's is not a rhetorical flourish. The jury has before it, through Lt. Nigrelli's testimony, a working example of a constitutionally adequate policy that would have required the officer to select a non-lethal response given the presence of citizens — and that would have prevented this shooting. That is the functional definition of moving-force causation: if it were not for the City's unlawful policy permitting officers to shoot a dog without first exercising less-lethal alternatives and assessing actual threat posed, the constitutional injury here would not have occurred.

**C.  Relief Requested.**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant judgment as a matter of law that the City's custom, policy, or practice of authorizing the use of lethal force against dogs without first assessing the actual threat posed was a moving force in Officer Leach's unconstitutional seizure of Zyria, leaving only damages for the jury.

## IV.  JUDGMENT AS A MATTER OF LAW SHOULD ISSUE ON THE FAILURE-TO-TRAIN CLAIM

**A.  The Court Should Apply Offensive Collateral Estoppel to the Failure-to-Train Theory on the Present Trial Record.**

By Decision and Order entered April 1, 2026 (Dkt. 109), this Court declined to apply collateral estoppel to the failure-to-train theory pretrial, reasoning that (a) the December 2019 roll-call "L/E Dog Bite Prevention" training had not been before the Dempsey jury and (b) Preston had "cited no testimony on what was actually said to the officers at that time." Dkt. 109, at 4-5. That gap has now been filled by the trial record. The evidence adduced at trial — principally Officer Leach's own testimony and the Rule 30(b)(6) testimony and trial admissions of Lt. Cuilla — establishes that the December 2019 roll-call training was substantively indistinguishable from the training the Dempsey jury found inadequate. The predicate for estoppel now exists.

Offensive collateral estoppel applies where (1) the issue is identical to that decided in the prior action; (2) the issue was actually litigated and decided; (3) the party against whom estoppel is asserted had a full and fair opportunity to litigate; and (4) the resolution of the issue was necessary to the prior judgment. See *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019); *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 37 (2d Cir. 2005). Each element is satisfied as to the adequacy of RPD's training on the use of force against dogs. The *Dempsey* jury found the training inadequate and returned a verdict for the plaintiffs on the failure-to-train theory on January 30, 2026. The uncontested addition to the record — the December 2019 roll-call training — was, as the evidence at this trial now shows, not a different or better training. It was the same PowerPoint content, in abbreviated form, that the Dempsey jury considered insufficient in its fullest form.

**B. Independently, the Trial Evidence Forecloses Any Reasonable Finding That the December 2019 Training Was Different, Better, or Ameliorative.**

Whether the Court reaches the collateral-estoppel issue or not, the trial evidence permits only one reasonable conclusion: the December 2019 roll-call training did not change the training program in any way that could salvage a rational finding for the City on this claim. Specifically:

**1. Officer Leach has no recollection of receiving the December 2019 training.**

Q  And then Exhibit 47, that's a 24-page PowerPoint and it's called
roll call training December 2019 L/E Dog Bite Prevention, is that
right?
A  Yes.
Q  And do you recall receiving that roll call training?
A  I don't personally recall receiving roll call training in roll call.
I'm just saying if it was December 2019, I was on the road then so
obviously I would have received it but I don't recall.
Q  . . . [B]ut you do not recall how long it lasted because you don't
recall anything about the roll call training; is that correct?
A  Yeah, that's correct.

Leach Trial Test. 71:6-72:10 (Apr. 14, 2026).

**2. The City's Rule 30(b)(6) designee and DiDomenico confirmed that the December 2019 roll-call training was only eight minutes long, was adapted from the DiDomenico slides without DiDomenico's input, and that the Department does not know who edited those slides.**

Lt. Cuilla testified at trial that the December 2019 roll-call training was approximately eight minutes long; that the Department did not consult the originating instructor, Reno DiDomenico, when it prepared the roll-call version; and that the Department does not know who edited the DiDomenico academy PowerPoint into the abbreviated version used at roll call. Cuilla Trial Test., Apr. 17, 2026. DiDomenico confirmed that the RPD did not consult with him in any way in putting together the abbreviated December 2019 roll call.

**3. The DiDomenico materials themselves — the source from which the roll-call PowerPoint was derived — instruct officers that the "offensive aggressive" posture means the dog is about to be shot.**

Officer DiDomenico confirmed in his Dempsey trial testimony that when he shows officers the diagram of the "offensive aggressive" posture during his Bite Prevention course, that

posture is "probably going to be shot." DiDomenico Dempsey Trial Tr. 81:1-7 (Jan. 27, 2026); see also id. at 82:24-83:11. He further admitted that the training teaches officers to reach "offensive aggressive" as a shoot situation — not a pepper-spray situation, not a baton situation, not a barrier situation. In fact, during the course of this trial, DiDomenico adamantly testified that he does not believe pepper spray to be an effective means of de-escalation with a dog that is charging at an officer, despite several professional studies, experts in canine behavior, and Department of Justice training's findings to the contrary. Evidently then, the City, trains its officers not to use pepper spray and instead to shoot a dog charging at them, a clear and specific deficiency in their training. *See* DiDomenico Preston Trial Testimony from April 21, 2026.

### 4.  The Dempsey jury found, and this record confirms, that the cartoon of dog postures is the only substantive content officers take away from the training — and that content teaches them to shoot.

The admitted deposition designations played for the jury include sworn testimony from rank-and-file RPD officers confirming that the "dog postures" cartoon is the only piece of the Bite Prevention training that they remember; that they received no scenario-based, shoot/don't-shoot training with dogs; and that their only practical canine-encounter training is firearms training in which they fire at a target simulating a charging dog to train shooting accuracy. These are the admitted designations from the Court's rulings on defendants' *Monell* deposition objections.

Officer Leach corroborated exactly this picture at trial: he has never received shoot/don't-shoot training with dogs; he has never received training on how to use less-lethal means against a dog running at him; the only moving-target training he has ever had is firearms training — which instructs shooting, not redirection. *See* Leach Trial Test. 58:15-18 (Apr. 15, 2026); id. at 77:22-78:15 (Apr. 14, 2026) (the only "moving target" training is firearms training with a simulated charging dog, in which officers shoot).

**5. The only remaining practical training RPD gives on dog encounters is firearms training — which, by design, teaches officers to shoot, not to choose a less-lethal response.**

RPD officers have confirmed that the only training they receive on dogs that approaches "scenario" or "simulation" form is firearms training in which a simulated dog charges and the officer fires. Leach Trial Test. 77:22-78:15 (Apr. 14, 2026); Cuilla 30(b)(6) Dep. 175:21-176:13 (no beanbag training for canine encounters; no requirement to attempt OC spray first). By design, that training reinforces the one lesson officers actually take away from the DiDomenico cartoon: a dog that presents with offensive aggression is a "shoot situation".

**C. The Evidence Satisfies Each *Walker* Prong as a Matter of Law.**

A failure-to-train claim under *Monell* requires (1) that the City's policymakers knew "to a moral certainty" that officers would encounter the situation; (2) that the situation presents either a difficult choice or a history of officer mishandling; and (3) that the wrong choice frequently causes constitutional injury. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). The trial record compels the conclusion that each prong is satisfied:

First, it is undisputed that RPD officers routinely encounter dogs on calls. *See* Rivera Dep. 115:23-116:14 (officers know dogs are likely to be present in homes). The "moral certainty" prong is satisfied. Second, the choice presented — whether to reach for a firearm or a less-lethal tool — is the classic *Walker* difficult choice, as Dr. Crosby explained and as the rank-and-file officer testimony confirms. Third, the training at issue — a DiDomenico cartoon that equates "offensive aggressive" with "shoot," combined with firearms training that teaches shooting a charging-dog target — produces the very constitutional injury it should have prevented, as the Dempsey jury found and as the record here confirms.

**D. Relief Requested.**

Plaintiff respectfully requests that the Court (1) apply offensive collateral estoppel to the failure-to-train theory of *Monell* liability, the predicate for which is now supplied by the trial record; and (2) grant judgment as a matter of law that the City's failure to train its officers on the use of force against dogs was a moving force in the unconstitutional seizure of Zyria, leaving only damages for the jury. In the alternative, Plaintiff preserves this motion for renewal under Rule 50(b).

### CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant judgment as a matter of law under Fed. R. Civ. P. 50(a) on each of the following: (1) the Fourth Amendment unreasonable-seizure claim against Defendant Leach; (2) the *Monell* custom-policy-practice claim against the City of Rochester; and (3) the *Monell* failure-to-train claim against the City of Rochester, leaving only the question of damages for the jury. In the alternative, plaintiff preserves each motion for renewal under Rule 50(b).

Dated: Rochester, New York
      April 21, 2026

                    Respectfully submitted,

                    ROTH & ROTH, LLP

                    By: /s/ Elliot D. Shields
                        Elliot D. Shields, Esq.
                        Attorneys for Plaintiff
                        192 Lexington Avenue, Suite 802
                        New York, New York 10016
                        (212) 425-1020
                        eshields@rothandrothlaw.com